**CASE NO. 22-1458**

# UNITED STATES COURT OF APPEALS
## FOR THE
# SIXTH CIRCUIT

**Anthony Eid**

*Plaintiff-Appellant*

v.

**Wayne State University, et al**

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Civil Action No. 2:20−cv−11718
Honorable Gershwin A. Drain, United States District Judge, presiding

**REPLY BRIEF OF PLAINTIFF-APPELLANT**
Anthony Eid

/s/ Joshua Adam Engel
Joshua Adam Engel (OH 0075769)
ENGEL & MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
 (513) 445-9600
 (513) 492-8989 (Fax)
engel@engelandmartin.com

**CORPORATE DISCLOSURE**

Appellant is not a subsidiary or affiliate of a publicly owned corporation.   There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE ................................................................................ii

SUMMARY OF ARGUMENT ............................................................................1

ARGUMENT ....................................................................................................3

   A.  Plaintiff-Appellant Did Not Forfeit His Procedural Due Process Claim ......................................................................................................3

   B.  Summary Judgement Is Not Warranted On Plaintiff-Appellant's Procedural Due Process Claim And Plaintiff-Appellant Should Be Given The Opportunity To Present His Case To A Jury ...................................6

      1.  Plaintiff-Appellant Has A Protected Liberty Or Property Interest ......................................................................................7

      2.  Wayne State Failed To Provide Constitutionally Required Due Process Prior To Dismissing Eid ............................................8

         a.  Simply Because Wayne State Asserted That Plaintiff-Appellant Was Dismissed For Academic Concerns Does Not Make It Conclusively So ................................................8

         b.  Plaintiff-Appellant Was Dismissed For Conduct, Not Academic Concerns ....................................................10

         c.  Wayne State Concealed Nonacademic Or Constitutionally Impermissible Reasons For Plaintiff-Appellant's Dismissal ..............12

         d.  Application Of *Endres Test:* The Wayne State Hearing Sought To Resolve Material Disputes Of Objective Fact ..................15

      3.  Plaintiff-Appellant Was Denied The Right To Adequate Process ...........20

      4.  Qualified Immunity Does Not Apply ...........................................23

CONCLUSION .................................................................................................24

CERTIFICATE OF COMPLIANCE .................................................................25

CERTIFICATE OF SERVICE ..........................................................................25

## TABLE OF AUTHORITIES

## CASES

*Armstrong v. City of Melvindale*, 432 F.3d 695 (6th Cir. 2006) ................................................6

*Atricure, Inc. v. Meng*, 12 F.4th 516, 540 (6th Cir. 2021) .......................................................3

*Board of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978) .............................. 9, 10

*Byrd v. Internatl. Bhd. of Elec. Workers*, 375 F.Supp. 545 (D.Md. 1974) .............................15

*Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053 (6th Cir. 2022) ................................5

*Citizens United v. FEC*, 558 U.S. 310 (2010) ........................................................................3

*DaimlerChrysler v. Durden*, 448 F.3d 918 (6th Cir. 2006) ......................................................6

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) ...................................................................*passim*

*Doe v. Cummins*, 662 F.App'x 437 (6th Cir. 2016) .................................................................7

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018) .........................................................*passim*

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) ...............................................*passim*

*Endres v. Northeast Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019) ...............................*passim*

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005) ..............................................*passim*

*Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001) .....................................................................................................16

*Haywood v. Hough*, 811 F. App'x 952 (6th Cir. 2020) ...........................................................3

*In re Lott*, 424 F.3d 446 (6th Cir. 2005) .............................................................................14

*Jaksa v. Regents of Univ. of Michigan*, 787 F.2d 590 (6th Cir. 1986) .......................................7

*Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294 (1984) ...............................................12

*Kanuszewski v. Michigan HHS*, 927 F.3d 396 (6th Cir. 2019) ..............................................24

*Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016) .......................................................................9

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ....................................3

*Madden v. Chattanooga City Wide Serv. Dept.*, 549 F.3d 666 (6th Cir. 2008) ........................5

*Mills v. Barnard,* 869 F.3d 473 (6th Cir. 2017)...........................................3

*Motir Servs. v. Ekwuno*, 191 F. Supp. 3d 98 (D.D.C. 2016)................................15

*Ogle v. Sevier Cty. Regional Planning Comm.,* 838 F.App'x 913 (6th Cir.2020)......................3

*Ohio Adjutant General's Dept. v. Fed. Labor Rels. Auth.*, 21 F.4th 401 (6th Cir. 2021) ..................................................................................................................6

*Paul v. Davis*, 424 U.S. 693 (1976)..........................................................7

*Regents of the Univ of Mich. v. Ewing*, 474 U.S. 214 (1985) ........................9, 10, 12

*Rossi v. Univ. of Utah*, D.Utah No. 2:15-cv-767, 2020 U.S. Dist. LEXIS 79782 (May 5, 2020)................................................................................................9

*Scott v. Harris*, 550 U.S. 372 (2007) .....................................................16

*Siegert v. Gilley*, 500 U.S. 226 (1991)....................................................7

*Smith v. City of Toledo*, 13 F.4th 508 (6th Cir. 2021).....................................7

*Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522 (6th Cir. 2014) ............................................................................................................6

*Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2018) ............................................................................................................5

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) .....................................14

*United States v. McMullin*, 739 F.3d 943 (6th Cir. 2014) ....................................5

*United States v. Reed*, 993 F.3d 441 (6th Cir. 2021).....................................3, 5

*Ward v. Monroeville*, 409 U.S. 57 (1972) ................................................12

*Williams v. Com. of Ky.*, 24 F.3d 1526 (6th Cir. 1994) .....................................24

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ..........................................7

*Yee v. Escondido*, 503 U.S. 519 (1992)....................................................3

**SUMMARY OF ARGUMENT**

This Court in *Endres v. Northeast Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019). warned against precisely what Wayne State is attempting to do in this case: "construe all types of misconduct" as professionalism concerns.   Under *Endres*, the decision to dismiss Eid from medical school was disciplinary, not academic, because the university engaged in first-level factfinding to resolve a disputed, objective question about the student's conduct.  938 F.3d at-300.

This case is not about a Court second-guessing the academic decisions of medical schools.  Wayne State rarely considered Eid's performance in class or clinicals and a substantial discussion of Eid's "academic performance" is not reflected in the minutes of either the Committees that decided his fate.  (Minutes, R.43-14, PageID#1029; Minutes, R.43-17, PageID#1037.)  Nor is this is not a case where only bare minimum due process protections were required because the student admitted to violating school rules.  The Promotions Committee minutes, for example, noted Eid's "total disregard for accepting any responsibility for his actions" and that he never "admit[ted] to any wrong doing on his part." (Minutes, R. 43-17, PageID#1037.)

In deciding to dismiss Eid, Wayne State failed to comply with the rules established by the Court in *Flaim v. Med. Coll. of Ohio,* 418 F.3d 629 (6th Cir. 2005), *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018), and *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018).   Eid was not permitted to be

present when Roe testified before the Professionalism Committee and was not shown all of the evidence used against him. In *Flaim,* even though a student had confessed, he was at least permitted to "listen to and observe the… testimony" of his accuser. 418 F.3d at 641. In *Miami Univ.,* this Court said, "The Constitution does require… that the student be provided the evidence against him." 882 F.3d at 603. Eid was also not permitted to question his accusers. In *Univ. Of Cincinnati* this Court observed that "witness questioning may be particularly relevant to disciplinary cases involving claims of alleged… harassment." 872 F.3d at 406. The fact that Eid admitted to some facts does not change this conclusion because he ultimately denied engaging in misconduct. In *Baum,* this Court held that a student had the right to confront his accuser even though the student conceded in a statement to an investigator that his accuser "was right and that he 'got it all wrong.'" 903 F.3d at 584.

Viewing the evidence in this case as a whole under this Court's decision in *Endres,* a reasonable jury could certainly conclude that the Eid was dismissed for disciplinary, and not academic, reasons. And viewing the evidence in this case as a whole under this Court's decisions in *Flaim*, *University of Cincinnati*, *Univ. of Miami*, and *Baum*, a reasonable jury could certainly conclude that Eid was denied the procedural due process guaranteed by the 14th Amendment.

**ARGUMENT**

**A.    Plaintiff-Appellant Did Not Forfeit His Procedural Due Process Claim**

Eid did not forfeit the claim that Wayne State's disciplinary action was disciplinary, and not academic. *Compare* Appellee Br. at 20-21. Wayne State does not suggest that Eid's due process claim was not properly before the District Court -- that is enough to avoid forfeiture even if that precise 'argument' was not advanced below. This Court has explained that "once a claim is 'properly presented, a party can make any argument in support of that claim [on appeal]; parties are not limited to the precise arguments they made below.'" *Atricure, Inc. v. Meng*, 12 F.4th 516, 540 (6th Cir. 2021), *citing Citizens United v. FEC*, 558 U.S. 310, 330-31 (2010). *See also Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (same), *quoting Yee v. Escondido*, 503 U.S. 519, 534 (1992)   Further: this Court "typically find[s] no forfeiture on appeal when 'a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised.'" *United States v. Reed*, 993 F.3d 441, 453 (6th Cir. 2021), *quoting Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017).

Eid did not "ignore" the issue of whether his dismissal from Wayne State was for academic or disciplinary reasons. *See* Appellee Br. at 20. This Court has observed that "if a party makes the argument in a different manner that can be fairly interpreted as 'another way of saying' the point, it likely did not forfeit that claim." *Ogle v. Sevier Cty. Regional Planning Comm.*, 838 F.App'x 913, 917 (6th Cir.2020), *citing Haywood v. Hough*, 811 F. App'x 952, 959 n.1 (6th Cir. 2020). In his Opposition to the Motion for

Summary Judgment filed in the District Court, Eid discussed the procedural due protections provided for students in disciplinary matters and observed that these were not provided because "he was told that his alleged offenses involved non-academic offenses stemming from Jane Roe's complaint." (Response, R.54, PageID# 1720-1721.) Eid's briefing before the District Court addressed "the need to provide students facing significant disciplinary penalties as a result of a credibility contest with a hearing and opportunity to conduct cross-examination." (Response, R.54, PageID#1729.) He cited, *inter alia*, this Court's decisions in *Baum* and *Univ. of Cincinnati* addressing the level of due process necessary in disciplinary hearings. Finally, Eid included an extensive discussion of the Wayne State hearings' focus on disciplinary, not academic, allegations. (Response, R.54, PageID#1734.)

Eid's response to the Motion for Summary Judgment was not required to directly address the question of whether the professionalism process was "academic" or "disciplinary" because, in context, Eid was clearly responding to Wayne State's arguments that the school had failed to follow this Court's decisions in *Baum*, *Univ. of Cincinnati* and other similar cases.[1]  His claim is that his due process rights were violated and he was not required to precisely state, "this was a disciplinary and not an academic

---

[1] Using the same analysis, Eid could suggest that Wayne State's failure to address *Endres* before the District Court acts as a forfeiture. But clearly that is not correct. This hypothetical illustrates that the failure to raise a *claim* below is not the equivalent of the failure to make an *argument* in support of that claim.

decision" to prove that claim  *Cf. Tree of Life Christian Schools v. City of Upper Arlington*,

905 F.3d 357, 386 (6th Cir. 2018) (Thapar, J. dissenting) (argument should not be

considered "beyond judicial review just because [party] did not use 'magic words'").

Forfeiture is not found because Eid "sufficiently subsumed within [his] arguments" the

question of the nature of the professionalism proceeding.  *Madden v. Chattanooga City*

*Wide Serv. Dept.*, 549 F.3d 666, 673 (6th Cir. 2008).  *See also Charlton-Perkins v. Univ. of*

*Cincinnati*, 35 F.4th 1053, 1062 (6th Cir. 2022) (finding no forfeiture where general

arguments concerning discriminatory actions were made).  In other words, the question

of whether Wayne State's dismissal of Eid from medical school was for disciplinary or

professionalism grounds under this Court's precedents is a "subsidiary" or "strain" of

the due process claim raised below.  This claim was not forfeited because there is

sufficient ability for this Court to analyze his constitutional claim based on the record

developed below.  *See Reed*, 993 F.3d at 453.  *Cf. United States v. McMullin*, 739 F.3d 943,

945 (6th Cir. 2014) (declining to find forfeiture of the "frisk" part of a stop and frisk

claim where briefing failed "to clearly distinguish between the constitutionality of the

stop and the constitutionality of the frisk").[2]

---

[2] Wayne State claims that "Defendants put this issue front and center of their motion
for summary judgment."  Appellee Br. at 20.  That is an exaggeration.  In the Motion
for Summary Judgment, Wayne State only asserted in a conclusory manner that "There
is no question the School dismissed Eid for lack of professionalism" and never cited –
much less engaged with – this Court's decision in *Endres* drawing the distinction
between academic and disciplinary dismissals.  (Motion, R.43, PageID#747.)

The cases cited by Wayne State are inapposite: they involved the failure to assert entire claims or legal theories, not arguments in support of those claims. *See* Appellee Br. 20-21, *citing Armstrong v. City of Melvindale*, 432 F.3d 695 (6th Cir. 2006); *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522 (6th Cir. 2014); *DaimlerChrysler v. Durden*, 448 F.3d 918 (6th Cir. 2006). While these cases caution against a party "fashioning" a new claim on appeal, this Court does not require a party to "raise… arguments *verbatim*" at the appellate level so long as the arguments support "consistently argued claims."[3] *Ohio Adjutant General's Dept. v. Fed. Labor Rels. Auth.*, 21 F.4th 401, 406 (6th Cir. 2021). "It would be unreasonable, and in some ways would defeat the purposes of appellate litigation, to require [parties] to raise the exact same arguments that they raised earlier." *Id.*

## B. Summary Judgement Is Not Warranted On Plaintiff-Appellant's Procedural Due Process Claim And Plaintiff-Appellant Should Be Given The Opportunity To Present His Case To A Jury

A jury should be permitted to decide two disputed material issues of fact: (i) whether Eid was dismissed for disciplinary, and not academic, reasons; and (ii) whether Eid was denied the procedural due process guaranteed by the 14th Amendment.

---

[3] These cases are also distinguishable on their facts. *Armstrong*, 432 F.3d at 700 (defendants failed to bring to the attention of the district court the possible applicability of state statutes); *Cooley Law School*, 759 F3d at 528 (legal theory "was not pled in plaintiff's complaint nor developed through discovery"); *DaimlerChrylser*, 448 F.3d at 922 (party sought to introduce a new issue into a choice of law dispute by arguing federal preemption).

## 1.    Plaintiff-Appellant Has A Protected Liberty Or Property Interest

Wayne State fails to address this Court's cases holding explicitly that the Due Process Clause is implicated by higher education disciplinary decisions.[4]  *Appellee Br.* at 26-29 *citing, inter alia*, *Jaksa v. Regents of Univ. of Michigan*, 787 F.2d 590 (6th Cir. 1986); *Flaim*, 418 F.3d at 633; *Doe v. Cummins*, 662 F.App'x 437, 445 (6th Cir. 2016);  *Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018);  *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017).  Wayne State does not ask this Court to reconsider or over-rule any of this authority.[5]

---

[4] Wayne State's argument that Eid's property rights theory was waived or forfeited is addressed in Appellant's Brief at 26 fn.12.  Regardless, Eid unequivocally argued he had a liberty interest in continued enrollment.  (Memo., R.54, PageID#1726.)  This Court in *Flaim* relied on *both* a property *and* a liberty interest in holding that "the Due Process Clause is implicated by higher education disciplinary decisions."  418 F.3d at 633.

[5] None of the cases cited by Wayne State address whether college and university students have a constitutionally protected interest in continued enrollment.  Appellee Br. at 21 *citing Smith v. City of Toledo*, 13 F.4th 508, 511 (6th Cir. 2021) (firefighter recruit); *Paul v. Davis*, 424 U.S. 693, 694 (1976) (photograph included in a flyer of shoplifters); *Siegert v. Gilley*, 500 U.S. 226 (1991) (derogatory letter from supervisor).  Wayne State's claim that damage to a student's reputation is "not enough to establish a constitutionally protected liberty interest" is foreclosed by this Courts statement in *Cummins* that for a students an "adverse disciplinary decision…  impugn[s] his reputation and integrity, thus implicating a protected liberty interest." 662 F.App'x at 445, *citing Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (when "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him" the requirements of due process must be satisfied).

2. **Wayne State Failed To Provide Constitutionally Required Due Process Prior To Dismissing Plaintiff-Appellant**

    a. **Simply Because Wayne State Asserted That Plaintiff-Appellant Was Dismissed For Academic Concerns Does Not Make It Conclusively So**

The parties agree that "whether Defendants afforded Eid sufficient process under the federal Due Process Clause… depends, first and foremost, on whether his dismissal was 'academic' or 'disciplinary.'" Appellee Br. at 22.

Wayne State is correct that professionalism is legitimately a part of the medical school curriculum. *Compare* Appellee Br. at 23-24. But Wayne State is only partially correct in suggesting that that "Eid does not dispute that the School dismissed him for lack of professionalism." Appellee Br. at 24, *citing* Appellant Br. at 30. What is undoubtedly true is that Wayne State claims, and continues to claim, that Eid's dismissal was couched in terms of 'professionalism.' But that is semantics. Whether "professionalism" in this case more accurately describes an academic determination, or a disciplinary determination, is very much in dispute.[6]

The answer to the question of whether Eid's dismissal was 'academic' or 'disciplinary' starts not with how Wayne State chose to characterize its decision, but with the Supreme Court's important admonition that "the decision whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information

---

[6] Eid's position for purposes of this Brief is simple: a jury should decide.

and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Board of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Eid does not contest that "when judges are asked to review the substance of a genuinely academic decision,… they should show great respect for the faculty's professional judgment." *Regents of the Univ of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).

But – and this is the fundamental flaw in Wayne State's Brief -- simply because Wayne State says that a 'professionalism' matter is an academic concern does not make it so. And simply because Wayne State asserted that Eid was dismissed for academic concerns does not make it conclusively so. "[A]n academic decision actually must be based on academics." *Rossi v. Univ. of Utah*, D.Utah No. 2:15-cv-767, 2020 U.S. Dist. LEXIS 79782, at *93 (May 5, 2020). As this and other Courts have noted, sometimes, a 'professionalism' matter is really a disciplinary matter that the school has tried to characterize as an academic matter. One judge explains:

> no doubt all educational institutions, perhaps professional degree programs in particular, want to make sure that their future alumni treat their colleagues, clients, and the general public with respect. But a public college cannot transform a punishment for "disruptive or insubordinate behavior," *Horowitz*, 435 U.S. at 90, into an academic decision simply by declaring it an academic goal of the school to cultivate civility in its students.

*Keefe v. Adams*, 840 F.3d 523, 539 (8th Cir. 2016) (Kelly, J. dissenting).

### b.   Plaintiff-Appellant Was Dismissed For Conduct, Not Academic Concerns

The Professionalism Committee's found that Eid had "demonstrated a pattern of harassment and misrepresentation." (Letter, R.43-15, PageID#1030.)   This is conduct, not academics.   Wayne State asks this Court to ignore this evidence because school officials, *post hoc,* claimed that the violation of sexual harassment rules was "irrelevant" and "merely a characterization" of Eid's conduct.   Appellee Br. at 28-29. But this only gets Wayne State half-way home because nothing in the record suggests that the Professionalism Committee or the Promotions Committee engaged in the type of academic analysis that animated the Supreme Court's decisions in *Horowitz* and *Ewing.* The Professionalism Committee and the Promotions Committee did not make findings based on the expertise of professional academicians, but, instead, engaged in fact-finding related to the Wayne State rules of conduct rather than Eid's professional abilities.

Wayne State repeatedly claims, for example, that this was an "academic" decision because the "decision makers" on the Committees "reviewed Eid's academic performance." Appellee Br. at 30, 38.   But the record shows that the Committees were trying to determine if, and to what extent, Eid harassed Roe.   One administrator admitted that the "most important goal" for the Professionalism Committee was to "provide the student, in this case Anthony Eid, an opportunity to tell his side of things to the committee."  (Jackson Depo., R.44-6, PageID#1141.)   Another acknowledged

that the "onus" is on the Professionalism Committee to "do some initial fact-finding." (Chadwell Depo. R.54-10, PageID#2287.)

Nor is any focus on Eid's "academic performance" reflected in the minutes of either the Professionalism Committee or the Promotions Committee. The minutes of the Professionalism Committee state that the Professionalism Committee "focused" on Eid's alleged "lying and harassment towards [Roe.]" (Minutes, R.43-14, PageID#1029.) The minutes of that committee consist of four single-spaced pages discussing Roe's claims and Eid's responses; the minutes contain no mention of Eid's academic performance beyond Eid's description of "his good record at [Wayne State] for the past nine years."[7] (Minutes, R.43-14, PageID#1026-1029.) The minutes of the Promotions Committee suggest summarily that the Committee "reviewed/discussed" Eid's academic performance – but the minutes reveal no substantive discussion of his performance in class or clinicals. The minutes of the Promotions Committee reflect the same focus on determining whether Eid had harassed Jane Roe. The minutes noted that Eid's "integrity was questioned" and that the committee suggested that his statements did not "coincide" with information contained in certain documents. (Minutes, R.43-17, PageID#1037.) The Promotions Committee felt that Eid failed to

---

[7] One administrator emphasized that because Eid was class president and had been by the faculty to address incoming students at orientation, "my mind didn't go that far, to reach that conclusion [that dismissal was possible]." (Chadwell Depo., R.54-10, PageID#2286.)

accept "responsibility for his actions."[8]  (*Id.*)  Instead, as the Chair of the Promotions Committee testified, Eid was questioned on factual matters such as his "viewpoint on some of the things that were submitted and… what was perceived as inconsistencies." (Baker Depo., R.45, PageID#1147.)

### c.    Wayne State Concealed Nonacademic Or Constitutionally Impermissible Reasons For Plaintiff-Appellant's Dismissal

The Supreme Court indicated in *Ewing* that the notion of judicial deference to academic decisions loses force when, the decisionmaker is "accused of concealing nonacademic or constitutionally impermissible reasons" for its action.[9]  474 U.S. at 225 In this case, there is evidence in the record permitting the inference that Wayne State decided to pursue this matter through the Medical School's professionalism process,

---

[8] Wayne State suggests that because the Promotions Committee decision was "careful and deliberate," this abrogates any due process violations.  Appellee Br. at 36.  That is not the right question.  The question is whether the process, regardless of how "careful and deliberate," included the procedural protections required by this Court in *Flaim*, *Univ. of Cincinnati*, *Univ. of Miami*, and *Baum*.

Wayne State cites no authority for the claim that the lack of due process in the Professionalism Committee hearing is "irrelevant" because the Promotions Committee was the final decision-maker.  Appellee Br. at 38-39.  That is because none exists.  The Supreme Court has never accepted the premise that serious constitutional deficiencies can be swept under the rug as long as a citizen may later have hearing before a different decision-maker.  *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 331 fn.2 (1984) ("We have refused to tolerate fundamentally unfair first-tier trials simply because a fair trial will be provided at the second-tier."; *Ward v. Monroeville*, 409 U.S. 57 (1972) ("Nor, in any event, may the… procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication.").

[9] The Supreme Court in *Ewing* indicated a reticence to defer to educators when "the procedures used by the University were unfair in any respect…" 474 U.S. 225.  That is this case.  *See infra.*

rather than the standard disciplinary track, in order to avoid this Court's decisions in *Baum* and *University of Cincinnati.*

This case started like any other Title IX/sexual harassment case: Wayne State received a complaint of harassment against Eid.[10]  (Report, R.43-6, PageID#968.) Normally, the school would follow its policies – including a set of "interim" guidelines established to comply with this Court's decision in *Baum.*  (Guidelines, R.54-20, PageID#2367).  Instead, Wayne State officials discussed the allegations against Eid at a "Behavioral Intervention Team" ("BIT") meeting.  (See e.g. Camaj Depo., R.44-5, PageID#1123, 1132.)   The BIT – *not Jane Roe* -- decided not to forego the standard process and refer the matter to the Medical School's professionalism process.[11]

Wayne State asserts that the school did not make a "strategic" decision to refer that matter to a process with significantly fewer protections for accused students. Appellee Br. at 32-33.  But Wayne State fails to refer this Court to anything in the record explaining *why* that decision was made by the BIT.  The inference that this was done to "avoid providing the student with the heighted procedures that the Due Process Clause

---

[10] Wayne State suggests that the school "chose not to process Roe's complaint as a student conduct matter" because "Roe chose not to file a charge…"  Appellee Br. at 32.  The record contains no evidence that Roe ever made such a decision – the citations to the record provided by Wayne State do not reflect any such "choice."  Moreover, any difference between a "complaint" and a "charge" is a meaningless semantic distinction in the Wayne State system with absolutely no basis in the record.  Appellant Br. at 12 fn.7.  Wayne State never addresses this.

[11] This was done even though the text messages between Eid and Roe occurred before Eid was a medical student.  (Eid Depo., R.45-1, PageID#1157.)

may demand" is not speculation – it is precisely what this Court warned in *Endres* that schools would attempt to do.   938 F.3d at 299.   (*See e.g.* Jackson Depo. R.44-6, PageID#1143 (medical school did not follow interim guidelines designed to implement *Baum*).)  Wayne State is precluded from arguing otherwise.  Wayne State objected to any questions about the exact discussion at the BIT even though the investigator acknowledged that this process had never been used before.[12]  (*See* Camaj Depo., R.54-7, PageID#1133; Chadwell Depo., R.54-10, PageID#2269.)  This is improper use of attorney-client privilege as a "sword and shield."  This Court explained:

> litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. "[T]he attorney-client privilege cannot at once be used as a shield and a sword." But, while the sword stays sheathed, the privilege stands.

*In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005), *quoting United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).  On the one hand, Wayne State argues that the BIT made decisions for completely legitimate reasons while, on the other hand, Wayne State prevented witnesses from testifying about what was *actually* discussed during the BIT meetings.  Wayne State, thus, is precluded by the 'sword and shield doctrine' from asserting that the BIT did not seek to use the Medical School professionalism process to skirt the stronger procedural protections of the post-*Baum* guidelines and procedures.

---

[12] Appellant Br. at 11.  Wayne State does not respond to this issue.

14

### d.  Application of *Endres Test:* The Wayne State Hearing Sought To Resolve Material Disputes of Objective Fact

*Endres*, Wayne State acknowledges, is the controlling decision.

Wayne State primarily seeks to avoid this Court's decision in *Endres* by suggesting, "there was no need for the School to resolve material disputes of objective fact."[13]  Appellee Br. at 31.  Wayne State asserts

> the decision to dismiss Eid was not based on resolution of disputed, objective facts but instead on a holistic consideration of his academic performance, his admitted conduct, and his demeanor and presentation before the Promotions Committee.

Appellee Br. at 30.    This is not true.  The letter to Eid from the Professionalism Committee, for example, does not mention *any* academic issues but states that Eid had "demonstrated a pattern of harassment and misrepresentation."  (Letter, R.43-15, PageID#1030.)    And the minutes of the Promotions Committee stated that his dismissal was for "professionalism actions and lack of integrity."  (Minutes, R.43-17,

---

[13] Wayne State's suggestion that *Endres* is distinguishable because, in this case, Wayne State's decision "rested exclusively" on a "subjective assessment" is addressed *supra.* Appellee Br. at 27.

Wayne State also seeks to distinguish *Endres* on the grounds that the case was decided on a motion to dismiss, not summary judgment standard.   Appellee Br. at 33-34.  But Wayne State fails to explain why this makes a difference here; the standards differ in terms of how factual allegations are handled but are the same in terms of applying law to those facts.  While the procedural posture of a case on a motion to dismiss is different than the procedural posture of this case, the legal principles established by *Endres* remain applicable to the facts of this case.  *See Motir Servs. v. Ekwuno*, 191 F. Supp. 3d 98, 113 (D.D.C. 2016) ("The same legal principles apply… at both stages of litigation, however."); *Byrd v. Internatl. Bhd. of Elec. Workers*, 375 F.Supp. 545, 555 fn.3 (D.Md. 1974) ( "the applicable legal principles are the same in both instances").

PageID#1037.) *Cf. Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001) (reversing summary judgment after finding that a student had raised on issue of fact about whether a decision to require his withdrawal was the result of an unlawful reason "rather than a careful and deliberate evaluation of his academic ability").

Here's Wayne State's problem: if Wayne State's claim that Roe was not relevant to the process is true, then there was no need for Roe to present testimony and evidence to the Professionalism Committee.[14] So why was she there?

Roe was there because Wayne State officials believed that her testimony was necessary to prove Eid committed misconduct. Emails produced in discovery showed that the Professionalism Committee wanted Roe present to answer outstanding factual questions. The Assistant Dean wrote to Roe's mother: "If there are any points of

---

[14] Wayne State asks this Court to consider a *post-hoc* declaration from a Committee member claiming that the Promotions Committee "did not discuss" Roe or her testimony. (Gray Decl., R.43-2, PageID#807.) Appellee Br. at 29. Such assertions are contradicted by other evidence, particularly the emails cited *infra.*, and leave open the question of why, then, did they work so hard to make sure that Roe could appear only to completely ignore her? The minutes of the Professionalism Committee, which describe extensive testimony from Jane Roe and her mother about Eid's alleged misconduct, were "provided to the" Promotions Committee. (Minutes, R.43-14, PageID#1026-1028; Minutes, R.43-17, PageID#1037.) The Court is not required to accept a version of the facts that is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

clarification they [the committee] would then ask [Roe] and you about your experiences…" (Email, R.54-15, PageID#2349.) Her mother wrote, "we all really feel like [Roe] should be present." (Email, R.54-15, PageID#2348.) Wayne State officials believed that Roe was more credible that Eid and that she would support a conclusion that Eid violated the rules. The Assistant Dean, in another internal email, acknowledges this: "I spoke with [Roe's mother] today and she and her daughter will be very compelling. I think the Committee needs to hear from them." (Email, R.54-15, PageID#2347.)

The depositions of the committee chairs support an inference that Roe was invited to testify in order to resolve factual issues about the exact nature of Eid's conduct. The Chair of the Promotions Committee testified:

> A. …The focus was really, and the concern really was on [Eid's] behavior, some – some very big inconsistencies, and the fact that at least during the committee hearing, it appeared and the impression was from -- from the members of the committee that he was taking no responsibility for any of his decisions or behaviors.
>
> Q. Dr. Baker, is it fair to say that [Eid's] explanation for why he made contact with [Roe] was that his accounts, both bank accounts and computer accounts were being accessed without authorization?
>
> A. Yes…
>
> Q. And the complainant in this case challenged that notion; is that correct?
>
> A. When you say challenge, what do you mean?
>
> Q. Well, [Roe's] position was that she did not believe that [Eid] was telling the truth…?
>
> A. Yes.

(Baker Depo., R.45, PageID#1151 (objections omitted).)  Similarly, the deposition of the Chair of the Professionalism Committee demonstrates that the committee was trying to "gain a better understanding of what was going on." (Jackson Depo., R.44-6, PageID#1141.)  During the Professionalism Committee hearing, the Chair testified, Eid denied certain factual claims by Roe, such as that he lacked a "legitimate purpose for staying in contact with" Roe and that he did not send a letter purportedly from a lawyer.  (*Id.*)

Wayne State is not saved by suggesting that Eid took responsibility for his actions.  Wayne State's briefing is actually inconsistent about whether Eid actually "took responsibility" for professionalism violations.  On page 9, for example, Wayne State emphasizes that Eid took "full responsibility" for his messages to Jane Roe.  But on page 18, Wayne State cites committee minutes that Eid had "total disregard for accepting any responsibility for his actions."  Eid was consistent in denying that he broke any school rules.  He told the Promotions Committee, for example, "I am confused as to which specific code of conduct or school of medicine policies that I have broken."  (Letter, R.43-16, PageID#1034.)

Wayne State places significant weight on Eid's initial statement to the investigator, describing it as an "early admission[]" that "made it unnecessary for the school to resolve any factual disputes."  Appellee Br. at 27.  But this statement would not preclude a jury from finding, like in *Endres*, that there were disputed facts before

18

the Committees.[15]  Eid explained in his deposition that when he told the investigator

he took responsibility for sending messages to Roe: (i) he had not been given all of the

evidence; (ii) he believed he would be able to confront adverse witnesses at a hearing;

and (iii) he had been (mis)led to believe that if he simply acknowledged possible

misconduct without speaking to counsel, he would not face severe discipline.  He

testified:

> I think the Student Code of Conduct makes accommodations for students
> who take responsibility for their actions. I didn't know exactly what I was
> being accused of at the time, so, I thought this would be the best way to
> take responsibility for my actions and be able to move on with my medical
> school studies…   I don't think my actions represent a major character
> flaw.

(Eid Depo., R.45-1, PageID#1154.)  He added:  "I think that's the problem of drafting

a letter like this after you go into a meeting without knowing why you're going in there."

(Eid Depo., R.45-1, PageID#1155.)  He similarly stated in his Declaration:

> During the course of the non-academic disciplinary investigation I was
> denied important information… that would have caused me to hire legal
> counsel prior to meeting with WSU's Student Conduct Officer… and

---

[15] Wayne State, following the BIT meeting, decided to "initiate a process of fact-finding." (Chadwell Depo., R.54-10, PageID#2284.)  The statement to the investigator has limited value and reliance on such a statement is fundamentally unfair.  The investigator admitted that Eid was not informed about why he was meeting with the investigator.  (Camaj Depo., R54-7, PageID#2152.)  Moreover, the investigator did not make any effort to verify whether Eid's (or Roe's, for that matter) statement were true.

> Q, Do you remember whether [the investigator] actually investigated whether the claims made by either party were accurate?

> A: I'm not aware that she did that, no.

(Jackson Depo., R.44-6, PageID#1139 (objections omitted).)

appearing before the Professionalism and Promotions Committees to ensure that all of my rights were protected.  I was led to believe… that the complaint against me and the investigative process dealt with minor issues and at most would have resulted in minimal discipline.

(Eid Declaration, R.54-13, PageID#2341.)    According to Wayne State's own documents Eid did not, in fact, admit that he did anything wrong.  (*See e.g* Minutes, R.43-17, PageID#1037 (Eid demonstrated "total disregard for accepting *any* responsibility" (emphasis supplied)).)

Viewing the evidence in this case as a whole under this Court's decision in *Endres*, a reasonable jury could certainly conclude that the Eid was dismissed for disciplinary, and not academic, reasons.

### 3.    Plaintiff-Appellant Was Denied The Right To Adequate Process

Much of Wayne State's defense of its process assumes that the disciplinary process for Eid was exclusively academic.  Appellee Br. at 34-37.  *But see supra.*  Eid does not contest that he received a hearing and was permitted to present evidence and explain his conduct before the Professionalism Committee.[16]  Eid, thus, does not contest that the process was adequate if this Court determines that, under *Endres*, the process may be properly characterized as academic.  The record is clear, however, that the hearing provided by Wayne State would be considered inadequate under this Court's

---

[16] Eid would contest, however, Wayne State's claim that school officials "went out of their way to support and accommodate Eid…"  Appellee Br. at 39.  He submitted an affidavit stating that Wayne State officials had "prejudged [his] case," failed to disclose that "the mother of the complainant was asking… that I did not become a doctor," and that a "Counselor was not, in fact, my advocate."  (Eid Aff., R.54-13, PageID#2343.)

decisions in *Flaim*, *Univ. of Cincinnati*, *Univ. of Miami*, and *Baum* if the process is better characterized as disciplinary.

Wayne State argues that the rules established by the Court in *Flaim*, *Univ. of Cincinnati*, *Univ. of Miami*, and *Baum* – particularly the right to cross-examine adverse witnesses – are inapplicable to this case "because Eid admitted, from the outset, to the conduct that brought him before the Committee." Appellee Br. at 37. But Wayne State does not contest that Eid was not permitted to be present when Roe testified before the Professionalism Committee. *Compare* Appellee Br. at 11; Appellant Br. at 45. Wayne State does not even address that certain communications between faculty and Roe's mother were withheld. (Email, R.54-12, PageID#2337.) This is a due process violation *regardless of whether Eid had admitted to misconduct*.[17] In *Miami Univ.* this Court said, "The Constitution does require… that the student be provided the evidence against him." 882 F.3d at 603, *citing Univ. of Cincinnati*, 872 F.3d at 399-400. Thus, under the *Univ. of*

---

[17] While Wayne State asserts in conclusory fashion that the school "treated Eid fairly," the school ignores the specific evidence in the record that the Wayne State investigator ambushed Eid with unexpected questions and that the school was motivated to fund him responsible in order to avoid a scandal. *Compare* Appellee Br. at 39; Appellant Br. at 48-49. A jury could reasonably infer that a process where one school administrator before the hearing wrote, "Let's not let this happen on our campus" and "Thank God [Roe] turned to her parents for support and guidance" is unfair. (Email, R.54-6, PageID#2056.) Wayne State also suggests that Eid received adequate notice, but there is, at best, an issue of fact about whether the initial notice to Eid was misleading and whether Eid was permitted to review the evidence against him prior to providing a statement. *Compare* Appellee Br. at 35-36; Appellant Br at 47-48.

*Miami* standard, "to the extent any… evidence… was used by the [hearing panels] to adjudicate [the student's] claim, and [the student] was not provided this evidence, he has alleged a cognizable due-process violation." 882 F.3d at 603

Wayne State correctly observes that in *Flaim* and *Baum* this court held that cross-examination is unnecessary if a student has confessed. *Baum*, 903 F.3d at 584; *Flaim*, 418 F.3d at 641. The "confession" exception to *Flaim* should, especially in harassment cases, be read narrowly – it applies not when an accused students admits to some facts, but only "if a student admits to engaging in misconduct." *Baum*, 903 F.3d at 584. And it must be interpreted and applied in the context of this Court's observation in *Univ. Of Cincinnati* that "witness questioning may be particularly relevant to disciplinary cases involving claims of alleged… harassment." 872 F.3d at 406. In *Baum,* a student had the right to confront his accuser even though he conceded in a statement to an investigator that his accuser "was right and that he 'got it all wrong'" because he ultimately denied engaging in any misconduct. 903 F.3d at 584. In *Flaim*, cross examination was unnecessary because the student had been convicted of a felony – this fact alone was sufficient to warrant discipline so the student's credibility was not at issue. Most importantly, the student in *Flaim* was at least permitted to "listen to and observe the… testimony" of his accuser. 418 F.3d at 641. That did not occur for Eid. In fact, he was not even given a summary of the testimony of Roe and her mother. (Jackson Depo., R.44-6, PageID#1140.)

Eid did not confess in the way that the term is used in *Baum* and *Flaim*. He admitted to some facts, but then went on to contest that he violated any school policies or rules. The record here is clear. The minutes of the Professionalism Committee show that Eid said he did "not believe he was harassing [Roe.]" (Minutes, R.43-14, PageID#1029.) The minutes of the Promotions Committee are even clearer: "At no point during the enquiry did the student admit to any wrong doing on his part…" (Minutes, R.43-17, PageID#1037.)

Viewing the evidence in this case as a whole under this Court's decisions in *Flaim*, *University of Cincinnati*, *Univ. of Miami*, and *Baum*, a reasonable jury could certainly conclude that Eid was denied the procedural due process guaranteed by the 14th Amendment.

### 4.    Qualified Immunity Does Not Apply

Wayne State raises one final argument: qualified immunity. Appellee Br. at 39-41. This Court has long held that college and university students have a constitutionally protected interest in continued enrollment; this right is, thus, clearly established. In 1970, this Court held that school officials "were required to accord [students] procedural due process throughout the disciplinary proceedings which resulted in their dismissal from the University." This was reaffirmed by the *Flaim* decision in 2005: "in this Circuit we have held that the Due Process Clause is implicated by higher education disciplinary decisions." 418 F.3d at 633. And both *Univ. of Cincinnati* and *Baum*, where

this Court found that students have constitutional right to cross-examine adverse witnesses, precede the facts of this case.

The qualified immunity argument fails for another simple reason: Eid seeks declaratory and injunctive relief.   (Amended Complaint, R.24, PageID#558-559.) "'[Q]ualified immunity only immunizes defendants from monetary damages'—not injunctive or declaratory relief." *Kanuszewski v. Michigan HHS*, 927 F.3d 396, 417-418 (6th Cir. 2019), *quoting Williams v. Com. of Ky.*, 24 F.3d 1526, 1541 (6th Cir. 1994).

**CONCLUSION**

The Order Granting the Motion for Summary Judgment should be reversed, and this case remanded for further proceedings.

Respectfully submitted,

     /s/ Joshua Adam Engel
Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Suite 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g) and 6 Cir R. 32(a) I hereby certify that this document complies with the type-volume limitation. This document contains 6419 words, excluding the portions listed in 6 Cir. R. 32(b), as calculated by Microsoft Word.

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)


**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Ms. Elizabeth Phelps Hardy
Mr. David Andrew Porter

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)